**UNITED STATES v. PRIMILTON et al.**

No. 7383.

Circuit Court of Appeals, Fifth Circuit.

March 7, 1935.

Philip H. Mecom, U. S. Atty., and J. Fair Hardin, Asst. U. S. Atty., both of Shreveport, La., for the United States.

W. P. Prentiss, of Shreveport, La., for appellees.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellees are the lawful and the putative wife of Jewell Primilton, who died September 8, 1921, of pulmonary tuberculosis. They brought this suit on June 8, 1932, to recover on his war risk policy. Defendant's motion to dismiss for want of a disagreement having been overruled, a jury was waived and appellees had judgment. This appeal from that judgment assigns two errors. The court's action in overruling its motion to dismiss for want of a disagreement, is one; the other is the overruling of its motion for judgment, for want of evidence that the deceased became totally and permanently disabled during the life of the contract.

What claim there was, was made on her own behalf by, and what disagreement there was, was with only one of the plaintiffs, Burlene Primilton, the putative wife, the named beneficiary in the war risk policy. Appellant claims that what occurred between her and the Bureau was not in law a disagreement even as to her, but that if it was as to her, it certainly was not as to the other plaintiff, Delphia Primilton Stephens, the lawful wife. Appellee urges that the claim made by Burlene, since it was for the whole of, and she was the named beneficiary in, the policy, was, though made on her own behalf, effective as a claim for herself and for the lawful wife, and the disagreement which they say resulted having been as to the whole policy, was effective as a disagreement for both. Appellant insists that since the beneficiary named in the policy was not legally capable of taking as such, and the proceeds belonged to the community to be divided between the two wives equally, United States v. Robinson (C. C. A.) 40 F.(2d) 14, neither of the wives could claim for the other, but each could claim only for herself. It insists, therefore, that absence of jurisdiction to entertain Delphia Primilton's suit is obvious, and argues that an analysis of the record shows want of jurisdiction as to Burlene's claim too. The District Judge thought Burlene's efforts to obtain assistance from the War Department, and the result of them amounted to a claim and disagreement under the statutes, not only as to the one half of the proceeds she recovered, but as to the other half awarded Delphia as well. We do not think so. By statute, 38 USCA § 445, in order to maintain a suit for the proceeds of a war risk insurance policy, the

plaintiff must first make claim for them and obtain a disagreement. As amended in 1930, the act defines "claim and disagreement": "The term 'claim' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits and the term 'disagreement' means a denial of the claim by the director or some one acting in his name on an appeal to the director." (38 USCA § 445).

How does Delphia Primilton meet the test of the statute? She lodged no claim with the Bureau in writing, indeed, she lodged none at all. She had no disagreement with the Bureau; the only effort that she has made to assert her claim is in this suit, brought long after the time allowed in section 445 to bring it. A claim and a disagreement on the claim as provided by the statute are conditions precedent to suit. United States v. Collins (C. C. A.) 61 F. (2d) 1002; Wilson v. United States (C. C. A.) 70 F.(2d) 176; Fouts v. United States (C. C. A.) 67 F.(2d) 249; United States v. Peters (C. C. A.) 62 F.(2d) 977. She did not comply with them. She cannot sue.

We think the position of the other plaintiff, apparently better fortified, is only apparently so. For though there is correspondence in the record between her and the Bureau in which reference is made to Jewell Primilton's war risk policy, it does not show that she claimed within the time the statute required. Neither, of course, does it show a denial of such claim. The correspondence relied on commenced March 14, 1929, with a letter from Burlene to the Secretary of War, advising her widowhood, her need of special consideration, and asking if there was anything in the case of her husband, "Jewell Primilton, #3303203 Prt. Cas. Co. 4th Fr. Bus 154th D. B., born Benton, Louisiana, honorably discharged April 4, 1919, had U. S. or Government policy for $10,000; been dead quite a while." She was advised by the Chief of Awards Division of the Veterans' Bureau, by letter of March 27, that proof of the veteran's death and copy of his discharge must be furnished, and by one of April 10 that in the meantime she might file with the Adjusted Compensation Branch, Adjutant General's office, War Department, the form enclosed. Nothing further was done until March, 1931, when she wrote the Bureau, reminding it of the previous correspondence, and asking further advice, and it

wrote to her advising that the information it had formerly requested had not been received. Thus the year allowed after July, 1930, within which to file claim passed without any claim having been filed, and on August 6 McCoy, the Bureau's Director of Insurance, wrote her "With reference to your claim for adjusted compensation, you should execute the enclosed form 600" and he also enclosed her "Forms 527 and 527A" to be executed in connection with the death compensation phase of the case. Later, on October 6, the Bureau advised that "the cause of the veteran's death had been found to be the result of his military service, and therefore death compensation benefits will now be paid his dependents" and on December 15 the Director of Insurance wrote that since her marriage with Jewell was not valid, she was not the legal widow, and consequently she was not entitled to benefits from this office as his widow."

The first suggestion that this correspondence had been for the purpose of collecting Jewell Primilton's insurance appears in a letter of January 7, 1932, to the Director from counsel who brought this suit. In it, treating the letter of December 15, 1931, about benefits as though it had to do with insurance, and citing United States v. Robinson (C. C. A.) 40 F.(2d) 14, they first claimed that Burlene and Delphia, the putative and the legal wife, were each entitled to one-half of the proceeds of the policy. On February 17, in a letter beginning thus "In reply to your communication relative to Burlene Primilton's claim as the alleged widow for the benefits of the World War Compensation Act" the Director adheres to his position that she is not entitled to the benefits of the Act. A letter from her counsel, dated February 25, reasserting Burlene's rights, and one March 16, from the Director beginning "Relative to the adjusted compensation feature of the above entitled case" and refusing to recognize Burlene as entitled to such benefits, close the file.

Examining this correspondence in the light of the statute requiring suit to be brought "within one year after July 3, 1930" but "that this limitation is suspended for the period elapsing between the filing with the Bureau of the claim sued on, and the denial of said claim by the Director," we think it clear that the plaintiff, Burlene Primilton, has not complied with the statute and is not entitled to sue. There was never any writing which alleged permanent and

total disability, nor was there at least prior to the letter of January 7, when, if a claim, it was not effective because too late, any "words showing an intention to claim insurance benefits." All that went before this letter, except the letter to the Secretary of War, which mentioned the insurance policy, and that was not a claim, but a mere inquiry, related to and had to do with compensation. It is well settled that an inquiry is not a claim. Authorities supra. No timely claim was made to the Bureau, no offer made to supply proof that the veteran had a disablement; no opportunity was given the Director to consider and determine whether he had. It is said that the complete denial of liability, on the ground of plaintiff's incompetency to take, made proof of permanent and total disability unnecessary, and in itself constituted the complete disagreement the law requires. Such a denial would, no doubt, have sufficed for a disagreement, had there been a legal claim. Plaintiff's difficulty arises not out of her failure to prove that she and the Bureau had a disagreement over her right to compensation, but out of her failure to prove that she made a claim for, and there was a disagreement as to her right to the proceeds of Primilton's insurance. But if we should, as the District Judge did, assume that there was jurisdiction, plaintiffs would not be any better situated, for it is quite clear they have not made out a case on the merits. The army records show good health when admitted, and the same when discharged, both as to claim by the soldier, and as to findings by the examining officers. The army hospital records during his time of service show the soldier's admission, but for more or less minor ailments, having nothing to do with his lungs. These records show that in all examinations made while in the hospital his lungs were normal. After his discharge there is a Shreveport Charity Hospital record, in September and October, 1920, showing his reception for a gunshot wound in the upper thigh and his discharge from the hospital, and no notation of any trouble with his lungs. The lay testimony consists of the testimony of Burlene and of several neighbors, that when he came back from the army, he worked a little bit, and got sick, and worked a little bit and got sick, had a cough and fever and lost weight, but there is nothing more definite than this, except that when he left he was big and fat and hearty, and when he got back he was down in weight, had a bad cough and fever, and got "badder and badder." There is no doubt

that he did considerable work, driving a truck and working on the farm. As the witnesses put it "he done work in the hay field, plowed a little bit, piddled around." Their testimony is that he saw a doctor only once before he was shot in 1920. There is no testimony either that he had or took treatment for tuberculosis until shortly before his death. The testimony of the physician who attended him when he died is that the veteran gave the history of the duration of his ailment as three months. Testimony no more specific than this is, given fifteen years after the soldier's death, is not sufficient to establish total and permanent disability while his policy was in force. United States v. Sandifer (C. C. A.) 76 F.(2d) 551.

The judgment is reversed, and the cause is remanded for further proceedings not inconsistent herewith.