**UNITED STATES v. TOWNSEND et al.**

No. 3902.

Circuit Court of Appeals, Fourth Circuit.

Feb. 22, 1936.

Young M. Smith, of Washington, D. C., Atty., Department of Justice (Will G. Beardslee, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Asst. to the Atty. Gen., and James O. Carr, U. S. Atty., of Wilmington, N. C., on the brief), for the United States.

J. M. Broughton, of Raleigh, N. C. (E. G. Hobbs, of Selma, N. C., and Wm. H. Yarborough, Jr., of Raleigh, N. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is the second appeal by the government in the war risk insurance case, which was before us in U. S. v. Townsend, 73 F.(2d) 222. Two questions are presented: (1) Whether there was sufficient evidence of total and permanent disability during the life of the policy to sustain a verdict for plaintiffs; and (2) whether plaintiffs have shown a "disagreement" within the meaning of the statute as prerequisite to suit. We think that both of these questions must be answered in the affirmative.

Without reviewing in detail the evidence on the second trial as to total and permanent disability, it is sufficient to say that there was substantial evidence tending to show that the insured became afflicted with pulmonary tuberculosis during the life of the policy; that he grew steadily worse, notwithstanding careful treatment; and that the disease had reached such stage as to be incurable and totally disabling at the time that he ceased to pay premiums. As bearing upon the question whether the disease had reached such stage as to con-

stitute total and permanent disability while the policy was in force, we must look to its subsequent history as well as to what was known at that time [U. S. v. Diehl (C.C.A.4th) 62 F.(2d) 343, 345]; and, when this is done, it is not possible to say that there was such a lack of evidence as to justify the direction of a verdict for the defendant.

■ On the question of disagreement, it appears that one Rose, acting in behalf of plaintiffs, wrote to the chief of the Awards Division of the Veterans Bureau, submitting affidavits of a number of persons as to insured's being afflicted with tuberculosis at the time of his discharge, and that in this letter it was stated, not only that the affidavits were submitted in order that the war risk insurance policy might be revived, but also that it was the contention of claimant that insured contracted pulmonary tuberculosis while in service and was afflicted with that disease to a noticeable degree at the time of his discharge. The letter also contained the following statement: "The evidence tendered at this time tends to show that such are the facts, and if the government should find that he was afflicted with tuberculosis at the time he was discharged, then it is apparent that the War Risk Insurance will be revived and payment under the policy to his estate or the name (d) beneficiary is in order." In answer to this letter, the chief of the Awards Division wrote that the additional evidence submitted did not establish disability in a compensable degree and further stated: "The War Risk Insurance carried by the veteran while in the military service lapsed for nonpayment of premium due February 1, 1919. This insurance was not reinstated or converted by the veteran, and it has not been revived by legislation. There was no insurance in force on September 26, 1925, the date the veteran became permanently and totally disabled, or at the time of his death, which occurred on March 2, 1926."

The statute provides (38 U.S.C.A. § 445): "The term 'claim,' as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which *uses words showing an intention to claim insurance benefits,* and the term 'disagreement' means a denial of the claim by the Administrator of Veterans' Affairs or someone acting in his name on an appeal to the Administrator." (Italics ours.) The Rose letter certainly showed an "intention to claim insurance benefits" under the policy here sued on; and the letter of the chief of the Awards Division certainly showed a denial of the claim. It not only denied that insured had any degree of disability while the policy was in force, but also asserted that when insured became totally and permanently disabled the policy had lapsed.

■ While there may be some technical difference between asking that the policy of insurance be revived and the insurance thereunder paid to claimant and asking that insurance be paid on the ground that total and permanent disability occurred before the policy lapsed, there can be no question but that the claim and rejection here dealt with the very same questions which are involved in this litigation; and it would be carrying technicality to a ridiculous extreme to deny recovery because of the difference between the claim as filed and the claim sued on. The only purpose of requiring the filing of claim as a prerequisite to suit is to give notice to the government that claim is being made under the policy so that it may make investigation and pay any amount due claimant without being subjected to the trouble and expense of litigation; and any claim showing "intention to claim insurance benefits" answers this purpose. Congress doubtless realized that many claims would be made by illiterate claimants without the advice and assistance of counsel, and intended that a claim either calling attention to total and permanent disability or showing an "intention to claim insurance benefits" should be sufficient. It was no doubt to avoid such technical rulings as we are asked to make in this case that Congress embodied in the statute the broad provision which we have quoted.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.