## BURNS v. UNITED STATES.
### No. 109.
Circuit Court of Appeals, Second Circuit.
Jan. 9, 1939.

Magavern & Magavern, of Buffalo, N. Y. (Edmund Clynes, of Rochester, N. Y., of counsel), for appellant.

Thomas E. Walsh, of Washington, D. C., George L. Grobe, U. S. Atty., of Buffalo, N. Y., Joseph J. Doran, Asst. U. S. Atty., of Rochester, N. Y., Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., and Wilbur C. Pickett, Sp. Asst. to the Atty. Gen. (Keith L. Seegmiller, of Washington, D. C., Atty., Department of Justice, of counsel), for the United States.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from a judgment, dismissing a petition to recover upon a policy of war risk insurance upon summary motion made on affidavit. The petition, filed April 25, 1936, alleged that Burns, the plaintiff's intestate, had enlisted in the regular army of the United States and had been mustered out on April 10, 1919; that while in the service, a policy of war risk insurance was issued to him upon which he paid all premiums falling due throughout the month of April, 1919; and that from the date of his discharge until his death on October 8, 1923, he was permanently and totally disabled. The affidavit supporting the motion to dismiss stated that the file of the Veterans' Administration disclosed a letter mailed by the plaintiff to the Administration on November 3, 1923, and an answer of the Administration to the plaintiff, dated December 15, 1923, both of which were attached to the affidavit, and are reproduced in the margin.[1] Also that on May 12,

---

[1] "Warsaw, N. Y.
"Nov. 3, 1923.
"Bureau of War Risk Ins.
"I wish to notify you that Edward Thomas Burns, Claim No. C–418124, died on Oct. 8th from his disability received while in Federal Service.
"I have returned check for Oct. to Post Master to be returned to you.
"After discharged His War Ins. lapsed and on account of his disability, He was unable to obtain other insurance.
"Recently through your Bureau He learned He was entitled to reinstatement for which He had applied and had paid fees for same.
"At This time I will make claim for insurance as I have no other means of support.
"Mrs. Edward Thomas Burns
"1078 W. Buffalo St.,
"Warsaw, N. Y."

1933, the plaintiff filed a second claim which was denied by the "Insurance Claims Council" of the Veterans' Administration on October 1, 1934, and that this denial was "affirmed" by the Veterans' Administration on May 26, 1936. Although both the petition and the affidavit state conclusions supposed to flow from the foregoing, no other facts can be found in the record. We assume, however, that the statement in the opinion below is to be accepted that between December 15, 1923 and May 12, 1933, the plaintiff did nothing whatever.

The defendant concedes that the plaintiff's letter of November 3, 1923, was a "claim", but asserts that the answer of December 15, 1923, was a "denial". We are not sure that this would have been the case if the plaintiff had not so construed it by her long silence. It is true that the writer's meaning is plain upon careful reading: his request for the record of the decedent's death could only have been for the purpose of learning whether the plaintiff was entitled to compensation under § 471 of Title 38, U.S.Code, 38 U.S.C.A. § 471; since only so could it be relevant whether his "disability or disease" resulted from his service in the army: he was giving the plaintiff a chance to assert an entirely new claim. On the other hand it seems clear that he meant finally to reject her claim for insurance, and that finality was not affected by the fact that she would have been entitled to the insurance money, if the insured had been permanently and totally disabled when the insurance expired, regardless of his failure to pay any further premiums. Perhaps the writer ought to have suggested that possibility to her as well, but he did not do so, and it appears to us that he "denied" the claim in the sense of the statute. On the other hand the letter was addressed to one who was obviously unlettered, and who might not understand it as a better advised person would: its meaning is that which an ordinary person would expect so illiterate an addressee to put upon it. We may assume that read in such a context the letter was equivocal. But the plaintiff did nothing on receiving it; she did not send on the record of her husband's death, or press her claim for insurance. What conclusion was the administration then to draw? Just as the meaning of the letter was not what the writer in fact intended, but what he should have known the addressee would gather, so her private understanding of the letter was not important, but that interpretation of it which an ordinary person would impute to her from her silence. It seems to us that the natural conclusion was that she thought that her claim had been rejected; the possibility that for nearly ten years she might be merely awaiting a more suitable occasion to assert it, is too remote from the conduct of most persons to be fairly chargeable to the Administration. In Morris v. United States, 5 Cir., 96 F.2d 731, the supposed denial was very different. The letter stated that unless the applicant furnished evidence of permanent and total disablement, he could not recover and it concluded with an offer to consider any such evidence he might submit. It is true that the delay was there for nearly five years, but it is one thing expressly to propose to the claimant that he make good a defect in his proofs, and another to refuse his claim, even though the refusal might not have seemed as unconditional as in fact it was.

Judgment affirmed.

---

"December 15, 1923.

"Mrs. Edward Thomas Burns,
"1078 W. Buffalo Street,
"Warsaw, N. Y.      O. 322
                    C 418 124
                    Edward T. Burns
                    HAS-nvn

"Dear Mrs. Burns:

"In connection with your letter of November 3d, 1923, regarding the recent death of your husband, you are requested to furnish at your earliest convenience a certified copy of the public record of his death.

"This will be necessary in order to determine whether he died of a disability or disease resulting from service.

"His insurance application and folder have been reviewed, but there is no indication that he paid premiums on his insurance after being discharged, and, therefore, no payment to the beneficiary is in order.

"All future communications with reference to this case should bear the compensation number C 418 124, and the claimant's name, rank and organization.

"By Direction,
          "Charles E. Mulhearn,
              "Assistant Director,
                  "Claims Division.
"(R. 20–21)"