**DREW v. UNITED STATES.**

No. 7845.

Circuit Court of Appeals, Sixth Circuit.
June 28, 1939.

J. S. Edmondson, of Memphis, Tenn. (Dixon, Williams & Edmondson, of Memphis, Tenn., on the brief), for appellant.

Thomas E. Walsh, of Washington, D. C. (Julius C. Martin, Fendall Marbury, Young M. Smith, all of Washington, D. C., and William McClanahan and C. P. J. Mooney, both of Memphis, Tenn., for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This action was brought by appellant to recover on a $10,000 war risk insurance policy issued to Thomas Drew, who, at the age of twenty-two, was drafted into the United States Military Service April 11, 1918, and was discharged September 11, 1919, and died of pulmonary tuberculosis July 4, 1927. Appellant, wife of the deceased, and his mother, Edna Drew, were joint beneficiaries. His mother died March, 1936. The insured paid no premiums on his policy after his discharge; however, appellant contends it matured because of his total and permanent disability while in the service.

The insured made no claim under the policy during his lifetime but on June 8, 1931, appellant, claiming to be the sole beneficiary of his estate and of the policy, filed claim which was denied by the Veterans' Bureau June 18, 1935. She instituted this action June 27, 1935, both individually and as administratrix of the insured, seeking, in her individual capacity, to recover two hundred and forty monthly installments of $57.50, from July 4, 1927, and as administratrix, the same monthly installments from September 11, 1919, to July 4, 1927.

The lower court dismissed her action insofar as she sought recovery in a representative capacity on the sole ground that no claim had theretofore been filed by her on that account with the Veterans' Bureau and on the trial of the cause at the conclusion of her evidence, directed a verdict for the United States.

The insured received a high school education and at the time he entered the military service, was employed as a packer of china, at a salary of $50 a month, by a wholesaler in Memphis, Tennessee. He married in August, 1917, and lived with his

wife until his death except while absent in the military service. He had no children. When inducted into the service, he was in good health and served over-seas from September 23, 1918, to July 16, 1919, and was free from physical disability while abroad, except in April, 1919, when he contracted gonorrhea, from which he was apparently cured. He was returned to Camp Lee, Virginia, preparatory to discharge and on July 21, 1919, signed a statement that he was free from physical disability.

However, on casual physical check-up, tuberculosis was suspected and on July 31, 1919, on an X-ray examination, the diagnosis of the ward surgeon was "Pleurisy, chronic, fibrinous, left; in line of duty" and he was admitted to the base hospital the next day where he remained until September 10, 1919, with frequent examinations and treatments. His chest was aspirated and flaky, amber-colored fluid removed August 4, 1919, and three times thereafter. All examinations had while in the hospital were diagnosed as chronic pleurisy with effusions in the left base. On the date of his discharge, September 10, 1919, the examination showed the following:

"Chronic pleurisy with effusion left base. Sept. 10, 1919 Tbc. pulmonary chronic inactive both upper lobes. Chr. pleurisy left. In L. O. D. Dis. 40% A. H. B.

"The wound, injury, or disease ( is ) ̶(̶i̶s̶-̶n̶o̶t̶)̶ likely to result in death or disability.

"In my opinion the wound, injury, or disease ( did ) ̶(̶d̶i̶d̶-̶n̶o̶t̶)̶ originate in the line of duty in the military service of the United States.

"In view of occupation he is 40 per cent disabled."

The Board of Review, on the same date, made an examination of the insured and concurred in the findings of the medical officer. Thereafter, until June 12, 1923, numerous physical examinations were made by surgeons, physicians and roentgenologists of the United States Public Health Service. All concluded the insured was a victim of chronic pleurisy with fibrous adhesions on the left side of his lung with a heart displacement and some found encapsulated fluid in the pleural cavity. The fibrin showed from base of lung to the fourth rib on the left side, also between the upper and lower lobes.

On June 12, 1923, a physical examination by the Veterans' Bureau disclosed that insured was suffering from active pulmonary tuberculosis materially advanced and that it sprang from an old pleurisy in the left base of the lung. The prognosis was favorable.

The insured entered the National Tuberculosis Sanitarium at Johnson, Tennessee, on July 14, 1923, and was confined there until August 25, 1925, suffering from active, advancing tuberculosis. He was discharged for out-patient relief, totally and permanently disabled. The disease continued its ravages without abatement and took his life July 4, 1927.

The insured carried water for a section crew on a railroad at Coldwater, Mississippi, from November 1, to December 22, 1919. He was not physically strong and remained away from his work on rainy days and his fellow workers accompanied him home and cut his firewood. During the spring of 1920, he worked three weeks hauling and selling firewood. During the same year he worked for three weeks as a porter in a clothing store and for about a year operated an elevator. He took vocational training as an automobile mechanic for a year at the Agricultural Industrial College in Nashville, Tennessee. The lay witnesses testified in substance that when insured came out of the army he was thin and had open places in his side that were discharging pus and that he coughed considerably and had night sweats and shortness of breath.

Two qualified physicians testified from the medical records of the Veterans'. Bureau and the United States Public Health Service, that the character of the fluid drained from the insured's left pleura in 1919 was consistent with tuberculosis, although laboratory examinations failed to indicate its presence and that the army doctors might have overlooked tuberculosis because "in its very incipient stages, it is sometimes very difficult to find" and that if one has pleurisy and later breaks down with tuberculosis "we know that pleurisy was tuberculosis to begin with." They also testified that tuberculosis is the most frequent cause of pleurisy with fluid formation.

█ The controlling question presented on this appeal is whether the trial court erred in directing a verdict for the United States. Appellant had the burden of showing that the insured was permanently and totally disabled when the policy lapsed October 31, 1919.

It is a well-settled rule that issues of facts are to be determined by juries according to their own view, unless upon a consideration of all the evidence and every inference to be fairly or reasonably drawn therefrom, there is no substantial evidence to support the claim of the plaintiff. A case cannot be withdrawn from the jury if, in the opinion of the judge, there is a preponderance of evidence in favor of the party requesting a peremptory instruction. Goodwin v. Cincinnati Traction Company, 6 Cir., 175 F. 61; Travelers Insurance Company v. Randolph, 6 Cir., 78 F. 754.

"Juries are allowed to act upon probable and inferential as well as direct and positive proof." Story Parchment Company v. Paterson Parchment Paper Co., 282 U. S. 555, 564, 51 S.Ct. 248, 251, 75 L.Ed. 544.

The phrase "total and permanent disability" in a war risk insurance policy cannot be accurately defined. Each case must be governed by the particular facts and circumstances peculiar to it, and in considering a motion for a directed verdict, all undisputed facts and all reasonable inferences, deductions and conclusions to be drawn therefrom which are favorable to the beneficiary of the policy are to be regarded as true. Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492.

The inferences to be drawn from appellant's testimony, considering it as a whole, have a reasonable tendency to show that the insured was totally and permanently disabled at the time of his discharge from the service. There is lacking in the facts the usual element found in many cases where a directed verdict has been approved.

At the time of his discharge, the insured had chronic pleurisy and was totally disabled. It had theretofore been of such severity as to render airless, compress and block a part of the pleural cavity. He had submitted to four thoracenteses to relieve his condition.

Pleurisy is a common disease and usually does not call for medical or surgical treatment. However, it is closely related to tuberculosis and in some cases the effusions in the pleura become purulent and cause a highly dangerous physical condition, the only relief being thoracentesis, and if this does not remedy the suffering, ribs are sometimes removed.

The discharge of pus from the insured's side continued until 1920 according to the testimony of the lay witnesses and on June 12, 1923, he had pulmonary tuberculosis, materially advanced, which clearly indicates it began much earlier. Diagnosis is not an exact science and is more accurate in acute than in chronic diseases. The history of the science teaches us that the sequence of symptoms first and bodily changes with physical signs later, is not invariable, for a slow change in the organs or tissues of the body may be accompanied by compensatory processes so complete as to prevent any discoverable function or impairment.

Time, which obliterates the fiction of presumption, in the case of the insured, may have confirmed the opinions of the experts who testified from the medical history that the insured was suffering from a disease at the time of his discharge which had already produced such structural damages to his body as to permanently disable him.

The testimony of experts may not be arbitrarily rejected but, like the evidence of every other witness, is to be weighed by the jurors, who are at liberty to disregard it according to its importance in view of all the facts and circumstances in the case.

As we view the evidence, there is room for fair and sensible men to differ in their conclusions on it and the lower court erred in directing a verdict for the United States.

The failure of the insured to file a claim on his policy or long delay in instituting suit and the fact that he received vocational training and worked to some extent after his discharge from the army, are not conclusive against the right of appellant to recover on the policy but are all circumstances for consideration of a jury under appropriate instructions. Compare United States v. Higbee, 10 Cir., 72 F.2d 773; Mulivrana v. United States, 9 Cir., 41 F.2d 734; United States v. Warren, 8 Cir., 97 F.2d 722; United States v. Francis, 9 Cir., 64 F. 2d 865; United States v. Thomson, 10 Cir., 71 F.2d 860; Carter v. United States, 4 Cir., 49 F.2d 221; Edwards v. United States, 4 Cir., 53 F.2d 622; Garrison v. United States, 4 Cir., 62 F.2d 41; United States v. Kane, 9 Cir., 70 F.2d 396; United States v. Scott, 6 Cir., 50 F.2d 773; Bartee v. United States, 6 Cir., 60 F.2d 247.

The case of the United States v. Middleton, 6 Cir., 81 F.2d 205 is not controlling of the question here when considered as applicable to its peculiar facts. It only illustrates the general rule to be applied.

In that case the insured, while on active duty in France, contracted influenza and was hospitalized from December 21, to December 30, 1918. On June 23, 1919, he was again confined in a hospital and his condition was diagnosed as "pulmonary tuberculosis and pleurisy, serofibrinous, acute left." On August 6, 1919, he was brought back to the United States as a "casual," returned to duty August 7, and was finally discharged August 19, 1919.

At that time he signed a statement in substance that he had no reason to believe he was suffering from the effects of any wound or disease and a physical examination by army surgeons disclosed him to be sound and free from any disability.

Shortly after his discharge, he was examined by physicians who found him suffering from pulmonary tuberculosis and pleurisy in left lung and in 1921 the upper right lung was found to be involved. Hospitalization was recommended but the insured did not accept it.

█ Both pleurisy and tuberculosis have varying degrees of severity, ranging from slight or temporary total to permanent disability. The degree of these diseases is the determinative factor in fixing permanent and total disability from their ravages. Each destroys tissue and causes physical structural impairment. If either has reached its chronic stage, although arrested, and in its course has destroyed either lung or pleura membrane to such an extent as to permanently impair the body to the degree that the victim cannot continuously follow any gainful occupation without physical harm, it may be said that it has permanently and totally disabled him.

According to the evidence in the case at bar, the pleurisy of the insured was chronic and had reached a dangerous stage at the time of his discharge and either it or tuberculosis continued until he died.

The statement in the Middleton case that tuberculosis, although disabling in its incipient stages, does not justify the inference that such disability will continue throughout life, should be confined to cases with similar facts and not be extended to cases with essentially different ones.

Appellant insists that her individual precedent disagreement with the Government was sufficient to confer jurisdiction on the court to adjudicate her claim as administratrix. The statute provides, "In the event of disagreement as to claim under a contract of insurance between the bureau and any person or persons claiming thereunder" an action on the claim may be brought and "all persons having or claiming to have an interest in such insurance may be made parties to such suit" and "no suit on yearly renewable term insurance shall be allowed * * * unless the same shall have been brought within six years after the right accrued for which the claim is made."

The Act as amended provides that the term "claim" means any writing which alleges permanent and total disability at a time when the contract of insurance was in effect or which uses words showing an intention to claim insurance benefits and the term "disagreement" means the denial of such claim. Section 19 of the World War Veterans' Act 1924, 43 Stat. 612, as amended July 3, 1930, 38 U.S.C.A. § 445.

█ The purpose of requiring that a claim be filed as a prerequisite to suit is to give the Government notice that a claim is being asserted and thus afford an opportunity to make an investigation of the facts and determine whether there is liability without the delay and expense of litigation. United States v. Townsend, 4 Cir., 81 F.2d 1013.

Appellant, Rosa Drew, filed her claim June 10, 1931, in which she alleged she was the sole beneficiary and was appointed administratrix June 24, 1935. Insured's mother died in March, 1936, without filing a claim.

█ Under the provisions of the World War Veterans' Act, Section 303, as amended by an Act of March 4, 1925, Section 14, 38 U.S.C.A. § 514, if a designated beneficiary of a war risk policy does not survive insured or survives and dies prior to receiving all of the installments, the estate of the insured is entitled to receive their present value thereafter payable and such assets are distributable to insured's heirs as of the date of his death, according to the intestacy laws of the State of his residence. Singleton v. Cheek, 284 U.S. 493, 497, 52 S.Ct. 257, 76 L.Ed. 419, 81 A.L.R. 923.

Under Section 8389, 1932 Edition, Tennessee Code, after the payment of the intestate's debts, the personal estate is distributable to the husband or wife if there be no children or their descendants, surviving. The evidence in this case showed that insured owed no debts and that the joint beneficiary of the policy, his mother, Edna Drew, had received no payments under it prior to her death.

██ Pursuant to these Federal and State Statutes, appellant became the sole distributee of insured's estate and, coupled with her joint beneficiaryship, was entitled to the entire proceeds of the policy at the date of the institution of the action.

██ As we construe the pertinent provisions of the Act here in question to giving effect to every part of it in arriving at the legislative intent, and considering the purpose of requiring the filing of claims, it was not intended that the claimant should disclose with particularity the names of others interested in the litigation in case of disagreement.

██ The Congress intended that the Act should be construed and applied to accomplish its purpose without resorting to refinements and technicalities. We quote with approval Judge Parker's statement in United States v. Townsend, supra [81 F.2d 1014]: "While there may be some technical difference between asking that the policy of insurance be revived and the insurance thereunder paid to claimant and asking that insurance be paid on the ground that total and permanent disability occurred before the policy lapsed, there can be no question but that the claim and rejection here dealt with the very same questions which are involved in this litigation; and it would be carrying technicality to a ridiculous extreme to deny recovery because of the difference between the claim as filed and the claim sued on. * * * Congress doubtless realized that many claims would be made by illiterate claimants without the advice and assistance of counsel, and intended that a claim either calling attention to total and permanent disability or showing an 'intention to claim insurance benefits' should be sufficient. It was no doubt to avoid such technical rulings as we are asked to make in this case that Congress embodied in the statute the broad provision which we have quoted."

Compare Coffey v. United States, 7 Cir., 97 F.2d 762, 117 A.L.R. 940; United States v. Powell, 4 Cir., 93 F.2d 788; Marsh v. United States, 4 Cir., 97 F.2d 327; United States v. Tate, 4 Cir., 99 F.2d 307; Johnson et al. v. United States, 10 Cir., 102 F.2d 729.

The case of Ivy v. United States, 5 Cir., 84 F.2d 37 is not contrary to the position taken here. While the court there said that each claimant must make his own claim and institute his own suit, the controlling facts were that the rights of the beneficiary who had filed the claim and instituted the suit within the time allowed by law were not to be defeated because the representative of insured's estate had failed to file a claim for installments accruing to assured before his death. Isolated statements in an opinion cannot be wrested from its facts to establish a legal principle. The case of United States v. Mills, 6 Cir., 91 F.2d 487 is clearly distinguishable. There the administratrix sought to recover on the policy relying for the prerequisite disagreement on a claim filed by the parents of the assured, neither being a beneficiary under the policy, nor interested in its proceeds as distributees. The case of the United States v. Primilton, 5 Cir., 76 F.2d 555 is also dissimilar.

There the lawful wife and the putative wife of the insured jointly sued. The putative wife was named as beneficiary and she wrote a letter to the Veterans' Bureau but filed no claim. The lawful wife made no claim of any kind. The court held there was no disagreement which would support an action.

██ We believe the fair test to be applied in determining the sufficiency of the claim under the statute is whether the claimant in case of disagreement would be the ultimate beneficiary of a judgment under the policy. The lower court erred in dismissing appellant's petition as administratrix and its judgment is reversed and the case remanded for a new trial.

SIMONS, Circuit Judge, concurs in the result.