## NEELY v. UNITED STATES.

### No. 4678.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1940.

H. E. DeJarnette, of Princeton, W. Va., for appellant.

Fendall Marbury, Sp. Atty., Department of Justice, of Washington, D. C., and Charles M. Love, Jr., Asst. U. S. Atty., of Charleston, W. Va. (Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur ·C. Pickett, Sp. Asst. to Atty. Gen., and Lemuel R. Via, U. S. Atty., of Huntington, W. Va., on the brief), for appellee.

Before PARKER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Southern District of West Virginia dismissing an action for the recovery of monthly installments of total permanent disability benefits under a policy of war risk term insurance.

Appellant, Dexter D. Neely, had been inducted into the United States army on May 18, 1918. On June 4, 1918, during his term of military service, a policy of war risk term insurance was issued to him. In November, 1918, he was sent to the Tubercular Sanitarium at Oteen, North Carolina, where he remained until his honorable discharge from the army on April 17, 1919. Appellant returned home with impaired health and in June, 1919, filed a claim with the Bureau of War Risk Insurance (hereinafter called the Bureau), through a lawyer, Ajax T. Smith, who was not employed as his formal counsel, but who was requested only to file the claim. Smith inquired concerning compensation matters in a letter dated June 7, 1919, and on June 19, 1919, requested information relative to obtaining insurance benefits by reason of total permanent disability. (Appellant paid no further premiums on his war risk insurance policy after June, 1919.) The Bureau wrote to Smith on June 23, 1919, relative to the completion of the compensation claim, and urged the continual payment of insurance premiums, be-

cause, as the Bureau wrote, the insured "* * * seems to be suffering from a disease which may make him totally and permanently disabled * * *." Other letters were exchanged between Smith and the Bureau, the Bureau finally notifying Smith on November 17, 1919, that the insured had been found to be temporarily totally disabled, but that on February 20, 1920, he would be re-examined.

Nothing further was done in reference to the original claim until July 16, 1921, when Mrs. Helen Chandler, a Red Cross official (acting on the request of appellant), wrote the following letter to the Bureau:

"The above named man was discharged from service May 17, 19. While in service he contracted pulmonary tuberculosis and after his discharge was at the U.S.P.H. S.H. at Oteen, N. C., for eleven months. While at the hospital the claimant filed claim for compensation and owing to total disability discontinued his monthly payments on his War Risk Insurance.

"The claimant has asked me to write you relative to the monthly payments now due him on his insurance and the procedure necessary for filing his claim for this money."

The Bureau replied through Assistant Director Leon Fraser in a letter dated August 4, 1921:

"Replying to your letter of July 16, 1921, in which you refer to the condition of this claimant, and advising of the disallowance of his insurance payments to which he feels entitled, we respectfully inform you a permanent and total rating has not been allowed in this case.

"It is therefore apparent that the claimant is not entitled to payments under his insurance policy, and until such time as evidence is received to the effect that he is entitled to permanent and total disability rating he will not of course be eligible to receive insurance payments under his policy. His disability is now rated as temporary partial 50% and his payments effective from July 1, 1921, are in the sum of $50.00 per month including dependent father and mother."

This letter was duly transmitted to appellant on August 12, 1921, with Mrs. Chandler's statement:

"I am enclosing a copy of a letter which I received a day or so ago from the Bureau of War Risk Insurance. You have no doubt been notified that your allowance

would be decreased beginning July 1st. I certainly am glad you have improved so much in health and I am sure your family will be delighted to hear of it.

"I am still worried about your insurance as I feel you are not protected and this letter does not make it at all clear to me. Would you like me to write again to find out, if possible, the status of your insurance?"

On October 31, 1921, Mrs. Chandler again wrote to the Bureau, this time requesting information relative to the reinstatement of insurance generally, and, in the instant case, as to a resumption of premium payments. In a reply of November 5, 1921, the Bureau informed her that the insured had not been rated as permanently totally disabled, but that he should immediately resume the payment of premiums " * * * in order that no question may arise in the future as to whether his insurance is in force."

For the next sixteen years, no action of any kind whatever was taken by appellant relative to this insurance. He was sent to numerous hospitals for examination and was awarded compensation in various amounts from the time of his discharge from the army. However, despite many requests made by the Bureau that he submit to hospitalization, he has not seen fit to take such treatment. On April 20, 1938, appellant filed a claim in the Veterans' Administration, which was denied on July 30, 1938. This ruling was affirmed by the Board of Appeals on November 17, 1938.

The instant action was filed by appellant in the District Court on November 30, 1938. At the close of the entire case, the court granted appellee's motion for a directed verdict on two grounds: (1) the suit was barred by the limitation provision in section 19 of the World War Veterans' Act, 1924, § 38, U.S.C.A. § 445, as amended by the Act of January 28, 1935, 38 U.S. C.A. § 445c; and (2) the claimant was not totally and permanently disabled while his policy of insurance was in force. This appeal was taken from the final judgment of the District Court dismissing, on these grounds, appellant's action.

Section 19 of the World War Veterans' Act, 1924, supra, provides:

"In the event of disagreement as to claim, * * * under a contract of insurance between the Veterans' Administration and any person or persons claiming thereunder an action on the claim may be brought against the United States * * * in the district court of the United States. * * *

"No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made * * * : Provided, That for the purposes of this section it shall be deemed that the right accrued on the happening of the contingency on which the claim is founded: Provided further, That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs. * * *

"The term 'claim', as used in this section, means any writing which alleges permanent and total disability at a time when the contract of insurance was in force, or which uses words showing an intention to claim insurance benefits, and the term 'disagreement' means a denial of the claim by the Administrator of Veterans' Affairs or someone acting in his name on an appeal to the Administrator."

The Act of January 28, 1935, supra, clarifies the above section by stating: "A denial of a claim for insurance by the Administrator of Veterans' Affairs or any employee or agency of the Veterans' Administration heretofore or hereafter designated therefor by the Administrator shall constitute a disagreement for the purposes of section 445 of this title."

Obviously, appellant's suit is barred by the statutory limitation unless it is saved by the clause that suspends the limitation " * * * for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs. * * *" The original claim was filed by Ajax T. Smith in June, 1919. No further premiums on the policy have been paid since then. As the instant suit was brought in November, 1938, the action must be regarded as having been filed too late, unless it be found that appellant's claim was pending in the Veterans' Administration during the entire intervening period.

We are of the opinion that appellant's claim was denied and that notice was given by the Bureau's letter of August 4, 1921, written to Mrs. Chandler (the representative of appellant) and forward-

ed to appellant. Under the rule established by this court in Simmons v. United States, 4 Cir., 1940, 110 F.2d 296, the statutory period of limitations was not tolled after August 4, 1921, and inasmuch as nineteen years had elapsed between the accrual of the claim and the instant suit, appellant has lost his remedy.

Simmons v. United States, supra, is on all fours with the instant case, and, in our opinion, is controlling of the main issue herein involved. In that case, the claimant alleged that he became totally and permanently disabled on December 6, 1927. He wrote to United States Senator Simmons on August 12, 1930, inquiring whether a "new law" entitled him to additional insurance benefits "on account of total disability," and asking the Senator to take the matter up with the Bureau. The Bureau received a copy of this letter from Senator Simmons. And on August 26, 1930, the Awards Division of the Bureau received also the following letter from the claimant: "Will you please advise me if I am entitled to my war risk insurance, under the provisions of the new act * * *. Since I have been drawing compensation for permanent and total disability since December 6, 1927, I feel that I am entitled to this insurance."

A reply to this letter dated September 2, 1930, included a quotation from the response written by the Bureau to Senator Simmons:

"* * * The records disclose that the veteran became permanently and totally disabled on December 6, 1927. At that time his insurance was not in force and for that reason is not payable.

"There appears to be no provision in the new law that affects the status of the insurance in this case. * * *

"Inasmuch as all United States Government Term Insurance, the kind which the veteran was granted, ceased to exist on July 2, 1927, and inasmuch as the veteran became permanently and totally disabled on December 6, 1927, it would appear that Section 305 [38 U.S.C.A. § 516] is not applicable."

The claimant did nothing about his claim until June 8, 1937, when he inquired about administrative review of his case. On June 28, 1938, he was advised of "final administrative denial," and on March 3, 1939, he began a civil action in the United States District Court. In holding that the Bureau's letter of September 2, 1930, con-

stituted a rejection of the claim, this court stated (110 F.2d at page 299): "However, the form of the claim bears upon its rejection. Thus, the * * * letter of September 2, 1930, in reply to plaintiff was undoubtedly responsive to plaintiff's letter and it advised him that his insurance was not payable. We think it constituted a 'denial' as that term is used in the statute. Cf. Burns v. United States, 2 Cir., 1939, 101 F.2d 83."

■ We believe that the letter of the Bureau, written to Mrs. Chandler on August 4, 1921, when viewed against the background of Mrs. Chandler's original inquiry, clearly constituted a "denial" of the appellant's claim and is, therefore, a disagreement for the purposes of section 19. Fortunately, an insured may make his claim without adhering to any rigid rule as to form. See United States v. Townsend, 4 Cir., 1936, 81 F.2d 1013, 1014. No sound reason exists as to why the Bureau should any more be hampered by technical rules in formulating its denial. The Bureau's response must necessarily fit the inquiry. It does not seem to follow that intelligent administrative procedure would be enhanced by requiring a standard-form of reply. In the absence of statutory mandate, we think it our duty to interpret the Bureau's reply in the light of the original application, and to give it that interpretation which appears reasonable from all the surrounding circumstances.

■ In reaching the above conclusion, we gave weighty consideration to the fact that appellant took no action from the time he received a copy of the Bureau's letter of August 4, 1921, to the time of the refiling of his claim on April 20, 1938. During this interval of over sixteen years, he made no effort whatever either to reinstate his insurance or to renew his claim of total and permanent disability. Such inaction could only lead the Bureau to believe that appellant had abandoned his claim. In any event, the passage of this lengthy period of time seems utterly inconsistent with any reasonable belief by appellant that the Bureau was still considering his original claim. In discussing a shorter period of delay in Burns v. United States, 2 Cir., 1939, 101 F.2d 83, 84, Judge Learned Hand stated: "It seems to us that the natural conclusion was that she thought that her claim had been rejected; the possibility that for nearly ten years she might be

merely awaiting a more suitable occasion to assert it, is too remote from the conduct of most persons to be fairly chargeable to the Administration." Although this delay is not conclusive in the determination of the existence of a "disagreement", it is of impressive probative value in revealing the understanding of the interested parties which, in turn, is of importance in interpreting the legal effect of their correspondence.

Appellant places significance on the subsequent conduct of the Veterans' Administration in hearing the case to a final conclusion upon the supplemental application of April 20, 1938. Rosario v. United States, 1939, 70 App.D.C. 323, 106 F.2d 844, is cited in support of this proposition. However, this court distinguished the Rosario case in Simmons v. United States, 4 Cir., 1940, 111 F.2d 618, 619, denying the petition for rehearing in the first Simmons case, supra: "It is suggested that there is language in the opinion in the Rosario case from which it might be implied that any reconsideration of a claim would retroactively revive the tolling effect of departmental negotiations on the statute of limitations. This Court has considered this possibility carefully and is not prepared to accept such a view. If any reconsideration by the administrative body would have such an effect, it would seem that the statute of limitations applicable to an action brought in the District Court would be vitiated." The discretion residing in the Veterans' Administration to reconsider a claim that has already been denied does not have the effect of nullifying the statutory limitation. Ball v. United States, 6 Cir., 1939, 101 F.2d 272, 274; Jenkins v. United States, 5 Cir., 1936, 86 F.2d 123; Dowell v. United States, 5 Cir., 1936, 86 F.2d 120. See also United States v. Kelley, 8 Cir., 1940, 110 F.2d 922, approving the first Simmons case, supra. Hence, where a claim has once been barred by the running of the statutory period, a reconsideration by the Veterans' Administration does not operate to raise the fallen bar.

Since we have concluded that appellant's claim was barred by the statutory period of limitations, it is not necessary, for the purpose of this opinion, to consider the evidence in reference to appellant's total and permanent disability.

Nevertheless, we do feel that the District Court was correct in its ruling that appellant had not presented substantial evidence in support of his claim of total permanent disability. Appellant's refusal to accept hospitalization [Eggen v. United States, 8 Cir., 1932, 58 F.2d 616; United States v. Middleton, 6 Cir., 1936, 81 F. 2d 205; Theberge v. United States, 2 Cir., 1937, 87 F.2d 697, and his long delay in bringing this final action (Lumbra v. United States, 1934, 290 U.S. 551, 560, 561, 54 S.Ct. 272, 78 L.Ed. 492; United States v. Brewer, 5 Cir., 1938, 97 F.2d 899)], irresistibly lead to the conclusion that he was suffering, at most, from arrested tuberculosis and was not totally and permanently disabled at the time his claim arose. Cf. United States v. Baker, 4 Cir., 1934, 73 F.2d 455; United States v. Stack, 4 Cir., 1933, 62 F.2d 1056.

Appellant might well claim here that he did adduce substantial evidence to prove that his disability was total at the time of his claim; but we do think that such evidence was clearly lacking to prove the permanence of his disability. His malady had been diagnosed as arrested tuberculosis. Medical history is replete with numerous instances of sufferers from this disease, who have been cured and who have resumed their normal occupations or professions to become happy and useful citizens. Modern medical science has literally done wonders in staying the dread results of this disease, sometimes called "the great white plague". We cannot overlook the refusal of appellant to accept hospitalization. In United States v. Marsh, 4 Cir., 1939, 107 F.2d 173, 174, said Judge Parker, speaking for this Court: "When the cause of the trouble is known, and is known to be frequently curable, permanency cannot be said to exist until reasonable effort to cure fails. * * * It must appear that at the time of lapse insured was permanently disabled; and this must necessarily be uncertain where treatments were available to him which in the light of all the circumstances had reasonable hope of success. * * * Failure to take treatment may destroy whatever probative value death or permanency of disability occurring after lapse would otherwise have."

For the foregoing reasons, the judgment appealed from will be affirmed.

Affirmed.